We've only got one case on the afternoon docket, and you may call it. Mr. Easel, I understand you are reserving ten minutes for rebuttal. Yes, sir. Go ahead and make your appearance. K.T.A. is on behalf of the appellant. My co-counsel, Mr. Myers, is not able to be here because he's in a short-north trial in Columbus with Judge Marbley. I've seen the crowd in my courthouse. Yes, sir. I understand. Please, the court, counsel. Mr. Carter, for many years, has tried to get relief based on the fact that he was subjected to numerous adverse childhood experiences that were never fully presented to a jury. And that is why we're here really today, is that particular claim. In one sense, the question is going to be, well, how do we evaluate the district court's treatment of these claims after Collin v. Penholster? Because this court did not address Penholster when its decision was issued. In another sense, this case is also about the applicability of Rines v. Weber. Now, what we'd like to point out here is the court reversed and remanded this case for consideration of discrete claims, which are 28 and 29, which, according to the court's decision, did not expand the scope of his claims from what he presented in state court. I know that Judge Sutton took issue with that in his dissent, but that was the holding that I think Judge Martin addressed. The district court held that after the remand, the court, in fact, Judge Merz held that Penholster indicated, well, you can't hear, or actually, you can hear the claim, but you can't consider any of this evidence that was developed during federal habeas proceedings. So, what the district court did was the district court decided that the scope of the evidence is smaller than the scope of the evidence that the court of appeals viewed. It's the three claims, in essence, right? Yes. As opposed to another eight or so. Right. Does Penholster help you or hurt you? Penholster hurts any capital habeas litigant, Your Honor, because what it does is it is- That's why I was surprised that you were starting by invoking it. Well, the reason why is because I think I have to recognize that Penholster is a sea change in capital litigation. It completely wiped away this court's en banc holding in Getsey and basically says that if a claim is decided on its merits in state court, you can't add any evidence that you find in habeas to it. Okay? So, there's my problem. I've got all this- I have this mountain of evidence that we've obtained in habeas, and I can't get any court to look at it. So, what I did is because- Are you talking about just mitigation evidence? Yes. Just mitigation evidence. There's no doubt that Mr. Carter killed Ms. Messenger. There's none whatsoever. He did it. In fact, he confessed to it.  So, the fact that the district court applied Penholster immediately said to me, well, I've got this mountain of evidence, I'm going to have to take it back to state court because I operated under the assumption that Getsey was the rule. Getsey's no longer the rule, so I try to take it back to state court using Rines v. Weber and obtain a stay and obey order. The judge, Judge Merz, says you can only use Rines v. Weber for claims. You can't use it to exhaust evidence. So, he decided that I wasn't trying to exhaust a claim, I was trying to exhaust evidence. That is why we're here today, because that evidence never got considered, and of course- Claims are meritless without it. Which claims weren't exhausted? I thought the prior decision was pretty helpful to you on exhaustion, right? Yes, it was. It was totally helpful, Your Honor. Okay. So, if things are exhausted, doesn't that mean there's no reason to go back to state court? They were unexhausted due to the effect of Penholster, because Penholster says you can't use the Getsey case to have the court consider evidence you obtained in federal habeas proceedings. So, they're exhausted in one sense under our decision, but unexhausted per Penholster? That's correct, Your Honor. Well, that goes back to my first question. You're using Penholster as a groundbreaking decision for you. It allows going back, the stay and obey orders, to go back and supplement the state court record, and I'm just not sure that's what it had in mind. Well, Your Honor, I think it's exactly what the Supreme Court had in mind, because in Rines, they said to the effect that we're going to have these stay and obey orders, because otherwise, litigants are going to lose their ability to present these claims. So, we're going to have this procedure to ameliorate, and Penholster did not, in any way, shape, or form, eliminate the Rines v. Weber stay and obey procedure. For unexhausted claims? For unexhausted claims. Okay, so, I'm sure I'm just not getting your argument, but the way I'm thinking about it is if a claim's exhausted, that means you've raised what you're going to raise in state court, and to the extent there's evidence for that claim, you will have developed it and presented it in state court, and that'll be the state court record that Penholster's referring to, and that's just the way it goes. And so, what Penholster is saying is for those types of claims, you can't expand the record in federal court, and the only thing that's left is a claim that's not exhausted, and then you can go back. And that's what we have here, is we have a claim that's not exhausted. You pointed out in your dissent, Your Honor, that the claim wasn't exhausted. Yeah, no, I'll go back to that if I can get one of my colleagues today to go back to some other thoughts I had about this case. If it's not exhausted, then we can do a Rines stay and obey, because you pointed out that, I think you used the example of checkers and chess, that maybe it was a checkers claim when it was in state court, but by the time it got to federal court, it was a chess claim. Do you believe that such a good line could not find support from any other judge in this court? To this day, I can't understand that. It was just such a good line. But anyway, now I at least have one other person that appreciated it, so I'm liking your argument. So, Your Honor, what I'm trying to get to is either it's exhausted or it's not. If it is exhausted, as the Sixth Circuit said it was, then Judge Murr should have considered all this mountain of evidence with it, in spite of Penn-Holster. And the reason why now he could have done that is, of course, Martinez v. Ryan and Trevino, because Trevino specifically shows that Judge Batchelder was wrong in Murr v. Mitchell when she said that, well, we can't really expand Martinez beyond its specific holding. And Trevino says now you can. So if that's true, what we do is we go back and we say to ourselves, it's a defaulted claim, is there cause in prejudice? And there certainly is cause. State court, collateral counsel, as I've argued for years, Gallagher and Arnstein, failed to get this stuff into the record, and they had it. Because I remember specifically coming here to Cincinnati and they faithfully handed me these binders and said this is it, this is all the good stuff. The last time you were here there was a remand order. Is it your position that the remand order was complied with when the case went back to federal court, the federal district court, or it was not complied with, or the remand order couldn't be properly addressed because of pinholster? Do you have any comments about how the scope of the remand was implemented? I believe that the remand was not implemented as this court envisioned it at the time of its decision. That's because of pinholster. Pinholster is a sea change. It came back. It changed. It's a controlling authority now, and I think that because of that, the law, the case doctrine wouldn't apply, and they didn't really, and Murs was in a position where Judge Murs had to follow pinholster, despite the fact that the Sixth Circuit said this stuff's exhausted, because Murs is only looking at claims being exhausted. He's not looking at evidence. He's making a distinction, and that's what we have today is we have this distinction. Can Rines v. Weber permit exhaustion of evidence? Judge Murs says no. The Ninth Circuit says yes. So the case went back, and you agreed, or at least it sounds like you don't disagree with the legal accuracy of what the district judge did, but you've now taken an appeal from the district judge's rulings when the case was back on remand. So why is that? What are you asking for by way of relief now? Is it that you want us to try to fashion some kind of relief that would get the case back to state court so you can avoid the effect of pinholsters? Is that what all this is? Is that the only thing you're here for now? What we'd really like to do is go back, have this case remanded, because Rines v. Weber allows a stay in this type of case. And then we go back to state court, and we take that mountain of evidence, and we run it back through state court, and we come back. This isn't the only case this has happened in. This has happened in Conway v. Houck. This has happened in Cook v. Anderson. That's one of my cases. In Dunlap. You know, in considering your request, I guess we would need to make some sort of threshold determination that the evidence that you would like to present is even worthy of further consideration. And it's your argument that that determination was made the last time the appeal was here because of the remand instructions from the panel that Judge Martin presided, or are you asking us to make some new determinations? I think the court already made the determination that this evidence should be considered. I mean, this isn't just some useless mountain of evidence. This is, in fact, an entire life history of adverse childhood consequences, Your Honor. It's what they call a trauma narrative. And the fact that the trial judge in this case rejected the request for a life sentence because the trial lawyers didn't present a trauma narrative. They didn't show how Mr. Carter was corrupted by his family and other influences to the point where he ends up being a person standing in a courtroom charged with death, penalty, murder. Carter's history is just horrible. Head injuries, kidney injuries. He's head swollen up. His father is beating him, saying to him, say I'm not your father, bam, say I'm not your father, bam. He keeps hitting him. That's how this guy grew up. Now, just to understand your argument, is the argument that pursuant to the prior remand instructions from the last time you were here that the district court should have sent the matter back to state court pursuant to those remand instructions and you're appealing his failure to do so, or was that not your approach that you're saying that whatever pronouncements or rulings the judge made below when the case went back last time, this is some sort of new appeal of sorts? Procedurally, where are you procedurally in terms of how you're posturing this appeal to the panel at this time? Well, we think that the district court erred in not giving us a Rines v. Weber stay in a bay because he said that's not what Rines v. Weber allows and we think he's wrong. So your appeal now is that the judge didn't follow the remand instructions the last time we remanded and you're appealing his failure to do so. I don't want to put words in your mouth, but is that essentially what you're arguing? We've argued, first of all, that he failed to follow the court's instructions and consider all the evidence. He applied pinholster. That was what he used to say, I don't have to follow the Sixth Circuit's instructions. It's because pinholster came down. And from my understanding of the law of the case, I believe Judge Meurs is right because all of a sudden the Supreme Court says, wait a minute, the discretion box isn't this big, it's this big. And the evidence that you say the district court did not follow was all the so-called trauma or adverse evidence involving neurological exam, childhood history, laundry list of things. Yes, sir. Yes, sir, all of that. And you're saying that pursuant to this panel's remand order, the district court should have considered all of those matters. Yes. Unfortunately, I think if it did and it granted relief, that we would have been right here and instead of me being on the appellant's side, Mr. Madden would, and he'd be arguing that the district court should have followed pinholster. Well, I guess I'm the new judge to the case, but I guess maybe there's some disagreement as to how to read the panel's remand order. Yes. I guess we'll hear from them. It almost sounds like you're saying that if pinholster is followed, the remand order can't be complied with. And if you're saying that, that sounds like you're throwing in the towel. I'm not throwing in the towel, Your Honor, because even if pinholster changed the box, the size of the evidence that could be considered, the scope, and narrowed it, which is extremely narrow now, that that's not the end of this claim because state court lawyers are the cause as to why that evidence wasn't in the record in the first place. And obviously there's prejudice because this is a locket violation and jurors were deprived of factors that they could have used in determining whether death was an appropriate sentence. Okay. So you're just asking us to reiterate or clarify our instructions and remand with instructions to the district judge to send the case back to state court for rulings on these or to have first opportunity to rule on these matters. Is that what? That's what we want. We want to give the state court the comedy it's due. We want to give them the first bite of the apple. That's what we're trying to do here. So what's the precedent post pinholster that allows you to do that with a claim that's exhausted? With a claim that's exhausted, all the other cases that I've done it in. Post pinholster? Yeah, post pinholster. So it's an exhausted claim and you can still go back to state court? Yeah, because there's a new amount of evidence. Conway v. Howe, Judge Meurs did it in that case. Sixth Circuit or U.S. Supreme Court? Oh, no. I don't have any of those other than Gonzalez v. Wong. Gonzalez? Yeah, that's in the brief. It's the Ninth Circuit case that says you can actually do a stay and obey for facts. For facts as opposed to evidence. But a claim that's already been exhausted in state court? You can still go back and add evidence? I think you could if it changes. I'm just asking what happened in that case. I'm not asking your theory. Yes, yes. In Gonzalez v. Wong, they remanded the case to the district court so that they could do a stay to allow them to exhaust evidence. With respect to an exhausted claim? Yes. Okay, all right, great. I'll look at it. In my perspective, Your Honor, given the amount of evidence here, I think Judge Sutton may be right. We do have chess. We don't have checkers. It's a completely different ballgame with this evidence that's been excluded due to pinholster. And therefore, it's a new claim. That's how Vasquez v. Hillary used to work before it was moved off the charts. So we would ask that the court reverse and remand back to the court and tell the court that Rines v. Weber allows stays in this type of case because the evidence is so substantial that, in fact, it's a new claim as opposed to the discrete claim that was presented in state court years ago by state lawyers. We would also ask that the court ---- I think that's really all we really want. What year is pinholster? Pinholster actually came out right before the court issued its decision. Is it like 2012 or so? Yes, I think so. Well, Gonzales is before pinholster. Yes, but Gonzales ---- I was asking for post-pinholster cases. That's what I was asking. Okay. Pinholster is 2011. Okay, then it's 2011. Okay. So it's still before. I understand. Okay, those are the only cases that I have. The only case that we have that says that you ---- there's really no case that says this because if you look at Moore v. Mitchell, Judge Batchelder didn't consider whether pinholster could be ameliorated by a Rines stay, didn't consider that at all, doesn't even mention Rines v. Weber in that opinion. So I think that that is significant, that the fair to address that sort of issue and that given the fact that she used very broad language that it banned remands, I mean that banned a court from considering the evidence, that the court should really think that ---- I think, Gonzales, you are right. I think Gonzales comes after pinholster. I mean, it's the same year, but it's December, and so it looks like pinholster is before. So that's a case worth reading. Okay, Mr. Easel, your initial time is expired. You'll have your full ten minutes. Thank you, Your Honor. Good afternoon, Your Honor. It's Thomas Madden for the Ohio Attorney General's Office. I think that this case is definitely a procedural briar patch, but what can get lost here is that go back and look at, specifically, the investigation done by Mr. Wontuck, who worked for the Hamilton County Psychological Center, and it is the most thorough mitigation investigation I've ever seen in any of my cases and any cases that I've read coming out of the Sixth Circuit. He interviews friends. He interviews siblings. He interviews the mother. He interviews father, stepfather, aunts, uncles, everybody. Anywhere Mr. Carter had gone to a hospital, he sent letters to, along with releases, saying please provide any information that you have. Are you making the point this is in the state court record already? This is all in the state court record, and the point I'm making is that an ineffective assistance of counsel claim focuses on the investigation. In this case, there is no question about the investigation conducted here. So going back to state court on evidence that allegedly was not presented during the hearing has nothing to do with the investigation that was conducted here. There was a thorough investigation in this case. You're not denying that the information was not presented as evidence. You're saying the information was collected but due to ineffective assistance of counsel or some other reason it just wasn't introduced to the court? I think a lot of it was introduced. You have to go back and read the expert's testimony. He touches on everything. I mean, this is a huge amount of evidence, papers about Yeha, and he touches on all these different parts, whether it be mother was abusive, spanked them with belts, whether it was dad. What Judge Clay is asking, and it's what I want to know, is what's the difference between the state court record that already exists and the record that Carter would like to create now? I think it would be nearly identical, or things that were found. See, I think there's a big difference between a reasonable duty to investigate and an obligation to find. There's no question we have a reasonable duty to investigate here. They shook all the bushes and checked all the regular places and came up with a very comprehensive, well-informed mitigation strategy. Now, has there been some other things that have popped up here, like he's got brain damage and things that have popped up since then in federal court? Yes, there has been, but it's not due to the attorney's failure to investigate. The attorneys had experts. This guy was evaluated. Mr. Carter was evaluated for competency. He was evaluated for an NGRI. The Dr. Chapone, who they are attacking, interviewed those prior psychologists and said, hey, tell me what you have, what do you think, and then came up with his own diagnosis of borderline mental retardation and also drug dependency. So he had a thorough investigation. He had diagnoses. Now, are there other doctors willing to come back later and say, hey, I've got a diagnosis that you guys didn't find in state court? Yeah, here's what I think. Yes, there have been people who have come lately, but that has nothing to do with the ineffective assistance of counsel in state court. Can we easily find in the record this Wontuck examination? Oh, sure, I can give you a site. And the way in which it was used by counsel in state court proceedings? Yes, sir. This case has been done a little differently. They filed all the records that they are relying upon with the Sixth Circuit. So I've got that site. Record 24, 110, 111, and then record 24, 158, 159. Those are two documents that list all the information that Dr. Chapone relied upon. Surrounding all those two documents are all the interviews. I think they come before. It's basically record 24 and record 23. Most are record 24 and the latter part of record 23. Now, what happened previously that I think that the remand order was pretty clear when this court heard this earlier. It said that the claims were not defaulted and were exhausted in the languages insofar as they relate to the preparation of Carter's mitigation expert and the failure of Carter's mother to testify. Because of the thorough investigation here, post-conviction counsel, instead of saying there's a failure to investigate here, which it could never prove, he instead was like, well, Dr. Chapone's testimony wasn't that effective, and two, they didn't call mom to testify. They should have called mom to testify. So they were nitpicked. Instead of saying a total failure to investigate, they were more nitpicking about specific ways. So this court found that those two parts of a larger global ineffective assistance of counsel and mitigation were exhausted and then sent it back, quote, for the district court to determine in first instance whether Carter is entitled to a writ based on his counsel's performance at the mitigation stage of the proceedings. That's pretty direct. And I think Judge Merge saw that and said, okay, I now need to, for the first instance, decide this case on the claim of ineffective assistance of counsel and mitigation. However, after this remand order, the United States Supreme Court decides Collin v. Penholster. And Collin v. Penholster changed a bit the way D-1 was interpreted in this circuit. Before D-1, it was kind of a Hillary v. Vasquez, a pre-ADEPA case where California had argued that on a grand jury question, like when you add a bunch of new evidence to a claim, do you fundamentally alter the claim, making it a new claim that's now unexhausted? And the Supreme Court said, well, it depends on how much you add. And it was more like if you add a little bit, not so much, but if you add a lot, you do. And basically that's the way D-1 was interpreted in this circuit prior to Penholster. But when Penholster came down, it was clear. D-1 only pertains to evidence in the state court record. And so Judge Merge gets this remand order, says I need to decide this in first instance, and the only things that were exhausted are the preparation of the Carter's mitigation expert and the failure to call Carter's mother. Those are the only two. So in Penholster, that's the only facts I can rely upon. And then Carter files a motion to go back to state court under Reins v. Weber to present all the evidence because D-1 no longer allows him to offer this evidence. Judge Merge said, first of all, my remand order is not that. It said decide this case on first instance. I have to decide this on first instance. So he denied the claim. Also, if you look what the court said in Reins v. Weber, Reins v. Weber is a situation where you have a mixed petition. The clock's ticking on your time limit. So you file your petition, raise all your factual allegations because habeas petitions have to be not notice pleadings. They're factual pleadings. Put all your evidence in there and then say, in order to not be a victim of the statute of limitations, I need to go back and exhaust this new information. It's not a situation where you bring a claim to state court, it gets adjudicated, and then you try to gather evidence in federal court and then try to go back to beef up the evidence. First of all, the state courts won't hear them. Our post-conviction statute in Ohio is clear. You get one post-conviction petition. After that, it's very similar to the federal one. If you're not showing actual innocence, then you're not going to get a second petition. The state of Ohio should not be faulted for making this post-conviction statute very similar to the federal, the one Congress felt was appropriate. So in this case, I think a lot of this has to do with, a lot of this can be short cut now by just saying, listen, the record is clear that a thorough mitigation investigation was conducted. Can I make sure I'm following a part of this case? This is really a question for both of you, but the stay and obey idea and request, is that limited to the three main arguments on appeal here? In other words, is the point that, well, there's the concern about not having the mother testify, there's the concern about Dr. Chiapone, there's the concern about the transcript. Is the point of the stay and obey to get more evidence as to those claims? No, it's an attempt for a global failure to investigate claim. It basically would change the claim. It would be, they would go to the state court and say, here's your three reasons. This relates to 28 and 29 under their theory, because those reference that long list of other items. So when you take that list into account and you think about the claims that way, then you, so it's not about the stuff that's been briefed really. No, it's not. All right, well, that's the answer. Yes, sir. It's about their global claim. And my experience with this stay and obey thing, first of all, it's the district courts when they do it, it goes back. It's usually the time for them to do a free-for-all from everything that they can possibly think of under every fact they can possibly think of, and there's usually no limitation whatsoever on the amount of evidence they try to present in these petitions when they go back to state court. They know when they file these post-conviction petitions, the state court's not going to hear them because the state court does not hear second petitions unless they can show actual innocence. So they get their default. They come back here and try to present a claim that they were not diligent in presenting on first instance. And here's a significant difference. This is, and I try to point this out, and if you look at footnote 10, when the Supreme Court decided Penderholster, they said, okay, in footnote 10 they said, we really haven't come to consensus yet on Brady material. That's material that the state held, that the state didn't provide to the defense, and therefore we're not so sure whether we're going to have Penderholster apply to a Brady situation. I think Judge Clay pointed that out in the Hanna decision not too many years ago. And so that's different. What we have here are guys who know their own life history. These defendants know whether they were beaten as children. They know whether their mother was a protector or a neglecter, whether their father was never home. This is not information that is something that just all of a sudden is new and needs to go back to state court for a first time. This, by its very nature, and this is evidence that they were not diligent in presenting in state court. By its very nature. And this can go on forever. This has the ping-pong effect of trying to go, like I've got a claim of ineffective assistance counsel. It's bare-boned. It only talks about mom not testifying and Dr. Chapone not doing a good job. But I need to go back to state court and beef it up. I suppose you can have situations, it may not matter here, but where the defendants know all this. I mean, it's their life, but they don't really understand and appreciate all the psychological impact of it and how it all affected their life, right? Well, in this case you have. It takes sometimes medical professionals to sort all that out and explain it to a jury or a judge. Well, I think in a situation where they don't ask for a mental health professional at the state trial level,  but in this case he was interviewed several times by psychologists. And attorneys aren't psychologists. You know, ineffective assistance of a psychologist is not ineffective assistance of attorneys. Attorneys rely upon these experts to provide them guidance on how to present their mitigation, what's their best mitigation case with respect to a person's psychological back. This is a man with a pretty fairly low IQ. Yeah, there's no question about that. He is not, yeah, you're right. He is borderline, although he did drop his Atkins claim. He did go back on Atkins and dropped it for whatever reason. And a lot of this had to do with drugs. He made decent grades until about sixth grade, but then about sixth grade he started using crack cocaine. But your bottom line is it would be fruitless to send, to have, order the district court to stay and hold the matter in advance for petitioner to go back to state court to litigate these other eight or so listed matters that, and maybe more, that, as I understand it, they want to litigate. Because in your view, state courts just. I don't think it fits under the rule. I think this has more to do with what's the, I'm trying to think of the case. There's a Supreme Court's case that says if your avenue, if you look back to the state courts and the rules show there are no avenues for relief, then you're not, and there's nowhere to go, you're defaulted. That's the Illinois case where they didn't go to the Supreme Court. All Sullivan versus Barkle. And so I think they've got that problem. Yes, I absolutely do agree that they have that problem. Mr. Madden, some of these matters we're debating whether they should go back to state court. The prior opinion of this court indicated that some of those matters were already fairly presented to the state court and are not based on new or distinct theories insofar as they relate to preparation of Carter's mitigation expert and the failure of his mother to testify to mitigation proceedings. We're talking about claims 28 and 29. And it sounds as though we're talking about maybe the prior opinion of this court was incorrect but said that some of these matters that we're now debating had already been considered by the state court and that the problem was that the district court had failed to rule on or address these matters and consequently we remanded. And it sounds like you and your opposing counsel are talking about a case that's different from the case that was before the court the last time you were up here. I will say this. When this was sent back, I did believe that, well, reading both decisions, that there was obviously the presentment of some evidence but not all evidence and therefore under the D-1 standard as it existed before penholster, you could have a hearing on it in federal court and Judge Merz often did that. We'd have three or four of these hearings a year where you'd go down and you'd show what you presented in state court and then you'd offer some more and then Judge Merz would decide whether the state courts were reasonable or unreasonable for denying the claim. But the D-1 standard after penholster changed. And I think, you know, and if you look at what happened in postconviction, there's no question that the only claim of ineffective assistance to counsel that they brought on postconviction was the failure to call Carter's mother to testify. Now, they did bring on direct appeal the claim preparation of Carter's mitigation expert. Those two claims were brought in state court. And as you pointed out in your decision, you were saying there's no question that these two claims were presented. And so this should go back and have an evidentiary hearing on the global claim. And Judge Sutton was saying, I believe in his dissent, that was like, well, you can't exhaust the ten things by only presenting the two things. And then penholster hit after that. And I think Judge Merz, who would probably absent penholster, was ready to have an evidentiary hearing. But after penholster was like, I can't. I can only adjudicate what the facts that were presented to state court. And that's, even though the Sixth Circuit told me to adjudicate this in first instance, I will. But I can only do it on the six, not the eight. So I think that's what happened here. And I don't think that he abused his discretion or neglected to follow the remand order by doing so. I think that's exactly what he did. And I think also that Reins versus Weber has very little, if no application here at all, because first, they weren't diligent. All of this information, 99% of this information, is in Juan Tuck's investigation. You just read that, it covers everything. So they've known about this since before the trial. So there's no due diligence under Reins versus Weber. If that's due diligence, then due diligence means nothing. And secondly, well, I had a second point, but I just can't recall it. So I think that's the procedural posture this case is in, just by circumstance of Cullen versus Penholster coming down. I think that kind of took everyone by surprise. So it changed the landscape in habeas corpus. Unless the court has any other questions, the warden has nothing further. Certainly not. Thank you, Mr. Madden. Your Honor, Mr. Madden is correct. Look at the investigation by Mr. Juan. It is, in fact, the most complete mitigation investigation I had ever seen in all the years I've practiced law. I'm going to tell you something. It would have served Carter better to have just thrown all those papers into an exhibit and stuck them into the jury room and say, hey, read this, instead of putting Chapone on. You want to know why? It's really easy, Your Honor. But they did have the Juan Tuck stuff? They didn't have it. That's the problem. Because what you have to do is you've got this defense expert witness, you've got this psych guy who's sterile. If you read his testimony, it is completely sterile. It is not in any way, shape, or form animated or very convincing. And the problem is it's not buttressed. Do you have access to the Juan Tuck report? Yes, Juan Tuck worked for him. What you have to do to do a mitigation right is you have this expert come in, but then you buttress it with contemporary information and lay witness testimony. That didn't really happen here for all this stuff that we're talking about. That's the big problem. The second problem is Mr. Madden says this stuff's in the state court record. It was not in the state court record. Where it was is it was sitting in a filing cabinet in the court clinic, and no one got a hold of that until Arnstein and Gallagher were appointed by Judge Weber  Let's try to do a 26B and try to get that information in that way, and then, of course, they failed to appeal that, and that's how I got involved in the case. And there's the problem. This stuff was never in the state court record. You want to know what else is in that secret filing cabinet? You say it was not in the state court record, but it's in our record. It's in your record. How did it get in our record? I put it in your record in the district court. Why did Judge Merz allow that to happen after Penholster? It happened before Penholster, under Getz. And what was really important, Your Honors, and this is really significant, and I raised this in this brief and I raised it in the past brief, there was also a secret order by the state court judge. I forget what happened the first time Judge Merz had this. Did your client win or lose? Lost. With Judge Merz having access to all that material? Yeah, because he said these claims were defaulted. But defaulted still allows ineffective assistance, and ineffective assistance goes to the whole point of the investigation. But we didn't have, but the ineffective assistance on getting this stuff in was trial counsel didn't know about it. If you look at their depositions, which are in the record, they didn't know about it. And they didn't know that the judge had this secret order that says everything the court clinic prepares gets transferred over to the prosecutor. What do you mean by a secret order? They didn't know that this, none of the trial counsel knew that there was an order signed by the judge that made everything Ed Wontuck did transferred over and given, handed to the prosecutor. No idea that that order existed. It's in the record, it's mentioned in my principal brief, and it's mentioned in the prior briefs. They had no idea. When did that order come about? That order came about when Carter was tried, what is that, 92? Did it come about prior to the trial? Yes. And so the trial commenced without counsel for the other side knowing about any of this? No. The defense lawyers didn't know that the prosecutors had the entire mitigation case in their hands already. Had no idea that they had everything. And the trial proceeded without them ever knowing this? It proceeded without the defense lawyers ever knowing that that order existed until we deposed them. Sounds like an unexhausted claim. Yes. So I haven't processed all of Gonzalez v. Wong, but I did skim it a little bit. And one thing, I just wonder how you would respond to this. I'm not sure whether it's right or not. Of course, it's a Ninth Circuit decision as opposed to a Sixth Circuit decision. But the one thing it says, so even under Gonzalez it's saying, before you're going to do the stay and obey, it's not a function of the criminal defendant's counsel asked for this and therefore we're going to do it. You have to make a threshold showing that it's likely to change things. And I guess I'm still a little bit at sea in terms of what this new evidence is and whether it's going to change things. And I'm a little frustrated with the argument. On the one hand, I hear, well, the expert looked at all this, so the expert in that sense, all of this potentially was before the jury, certainly was available to the expert. On the other hand, I hear you saying, ah, but the stuff that was found in federal court really is materially different and would have changed things. And so I'm wondering even if you're right under Gonzalez, that Gonzalez is an accurate description of the law, that you've actually made a threshold showing that there's any likelihood that a new state court evidentiary hearing would improve things. Well, it's because then this evidence would be exhausted that wouldn't be subject to the pinholster bar and it would move right on through and have to be heard on the merits. The issue we have is that this evidence is just like in Wiggins. In Wiggins, they didn't have a mental professional testify. They dump truck the records on the jury. They just gave them all. And that was good, according to the U.S. Supreme Court. That was a good thing. And I think that's what we have here because we were diligent. As soon as these records were uncovered, they were put into a record. They were put into the federal record because we were all relying on the getsy interpretation of D-1. And that, as we know now, is not the right interpretation, according to pinholster. Mr. Madden has pointed out to the court, well, yeah, these defendants, they all know their life history. Yeah, they do, but they also don't understand the impact. They don't understand the significance. And more importantly, most defendants, and this is something that is taught, and in fact, I teach this in mitigation. They're embarrassed. Give me some examples of the evidence that was not available, that's not in the WANTEC report, not anywhere, that you've uncovered. Well, the first evidence. So it can't be in the WANTEC report, can't be mentioned by Chiapone, and that you've discovered since. And it's that kind of evidence that you think we should supplement the state court record. There is a pedigree of mental illness on the maternal side of Mr. Carter. All you have to do is look at pages 61 through 75 of my brief, so there's that. There's this entire pedigree. This isn't just appearing. This is a family history of it. You've got Mr. Carter's father who killed his own mother. You've got him. You've got Carter trying to commit suicide multiple times. You're still limiting it to things that weren't in any of this other stuff? Yes. I believe it does not explain the multiple times. See, this is the issue I've got. It's one thing to say, well, Carter committed suicide. So what? What's that mean? That's what a juror's sitting there. Chiapone has to explain, what gets a kid who's nine years old to the point where he wants to kill himself? How does that happen? That's the trauma narrative. That's where Chiapone fails because he didn't inject all this information to show all these things that happened to Carter growing up that twisted him into who he became. Then you pour alcohol on the mixture and drugs, and you've got a fire. That's what happened, and that's how Mr. Messenger's dead. I'm having a hard time with this because I know the drugs was in there. I tried to get you to limit it so I could. Okay. You can either make the probable cause. I know I'm just one vote, so maybe you don't care. All I'm saying is if you don't care, fine. But if you're going to make the probable cause, limit it to the question I asked. Okay, Your Honor. I put it in 67 through 75 of evidence that is incompletely touched upon or not touched upon at all. That's what is on those 14 pages. It's just summaries of that, and there are record citations. It's in the record at 20, and that's where all this stuff is, and it is completely different than the sterile talking head of Dr. Chiapone. It really gives life to how Mr. Carter became who he was. And this is the stuff that the jury should have heard, the sentencer should have heard. I don't care whether it's a judge or a jury. The sentencer should have heard this stuff because that's what the judge asked for. He asked for that in his opinion. He says the reason why I'm going to go with the jury opinion is because you didn't give us a trauma narrative. It's right in there. He doesn't call it a trauma narrative, but he explains these adverse childhood experiences. It's right there. I see that my time is running out. So this is basically what I believe. One, Carter has never received a merits determination of his compelling IAC claim using both exhausted and unexhausted evidence. If one characterizes Mr. Carter's evidence as a new claim, as suggested by Judge Sutton, then Penn-Holster would allow a stay and obey under the district court's theory. If you characterize it as additional evidence that supports a new claim, then maybe we should expand Rhines to include this because what happened here is Carter acted and relied on this court's precedent in Getsy regarding D-1. We functioned under Getsy four years, and then all of a sudden Penn-Holster came along and changed the game. Carter should not be faulted for failing to see that Penn-Holster was coming down the road and going back earlier. Carter simply should not be faulted for that. I think this is an extraordinary circumstance where this court can say, wait a minute, a Rhines stay is appropriate in this case. Can I ask just one last question? Yes, sir. I don't know when the argument in our prior decision was, but I do know that from looking at it, our decision came out at least nine, ten months after Penn-Holster. So why shouldn't all of this have been argued to the last panel? The argument was way before Penn-Holster. Well, I know, but I've seen a few supplemental authority motions in my day in capital cases. I mean, Penn-Holster comes out, you're the one saying it changed the game. Well, it changed the game in favor of the government. The state should be the one who would be raising Penn-Holster saying, wait a minute, Sixth Circuit, you shouldn't have said it all comes in. I'm just trying to make, I'm not doing a gotcha game. I'm trying to get you to think Penn-Holster, because it switches Getty, changes things unfairly, because everybody is assuming Getty applies, allowing you to supplement the record in federal court. I'm just saying, I just don't know why that argument wasn't made to us. Penn-Holster had been on the books for nine, ten months before this decision came out. Because we didn't know what the decision was going to be until it came out, and then we're remanded and we're back. I mean, we justifiably relied on existing precedent to form our litigation strategy, and it's gone. And now my only hope to get this stuff in front of a decision maker is doing a stay and a bail order, because Penn-Holster says it can't be heard unless it's exhausted. Your time has expired. Yes, sir. Thank you, Your Honors. Okay. Thank you, counsel, both of you. I guess I'm wondering, I always hesitate to ask for more written product from the attorneys when we have a fair amount already. Do you see any benefit here to a very brief post-argument, letter briefs or something like that? If you don't, that's fine. But there are just some kind of open questions here. I'll leave it to your discretion, Your Honor. Well, one question I have is maybe it's clear, but I thought that this WANTOC or WINETOC examination was in the state court. I thought you said in the state court proceedings, for example, you, Mr. Easle, said you put much of that, I think, before the district court. That's just one matter. I'm just wondering if my colleagues may have issues they wish to have addressed in letter briefs. If they don't, that's fine with me. Do you see any benefit? Are you pretty happy with the way you've submitted the case today and just leave it at that? I could brief that issue, Your Honor. Well, there may be other issues as well. Is there agreement between the two of you as to where WANTOC is or is not? I may have forgotten this, but 26B is the state court record. So that's where I said state court record. 26B is appellant appeal. Okay. Well, maybe we don't need anything further. We can talk about it. Yeah, if we decide we want something, we'll let you know. How about that? Okay. Well, we do thank you for your arguments today. Mr. Easel, I hope I'm pronouncing that correctly. We appreciate you taking this case under the Criminal Justice Act, and I understand that your colleague is busy up in the district court in Columbus, security all over the building with five defendants being tried at the same time. In any event, thank you. The case will be submitted, and you may adjourn.